IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IKON TRANSPORTATION SERVICES, INC.,

                Plaintiff,

v.

TEXAS MADE TRUCKIN, LLC a/k/a ALFREDO        OPINION and ORDER
RODRIGUEZ d/b/a FREDDY'S FREIGHT,
ADVANCED CONTAINMENT SYSTEMS, INC., and        19-cv-296-jdp
THOSE CERTAIN UNDERWRITERS AT LLOYD's
LONDON SUBSCRIBING TO POLICY NO.
B113610080C16-0417

                Defendants.

---

This breach-of-contract suit arises out of a trucking accident in Houston, Texas. Plaintiff IKON Transportation Services, Inc., the Wisconsin-based company that arranged the shipment, has sued the trucking company, its insurer, and the manufacturer of the cargo damaged during the accident. Two matters are before the court: (1) the parties' stipulation to dismiss the claim against the trucking company's insurer (identified here as "Those Certain Underwriters at Lloyd's London Subscribing to Policy No. B113610080C16-0417"); and (2) the manufacturer's motion to dismiss.

The first matter is easily resolved. In response to this court's show-cause order requiring defendants to supplement their allegations regarding defendant Lloyd's citizenship, Dkt. 41, the parties filed a stipulation to dismiss IKON's claim against Lloyd's under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Dkt. 44. The parties are free to dismiss Lloyd's from the case, but, technically, a stipulation under Rule 41(a) is not the proper vehicle. A stipulation under Rule 41(a) can be used only to dismiss the entire action; the appropriate vehicle is an amended complaint under Rule 15(a). *See Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015). The court

will construe the parties' stipulation as an unopposed motion to amend the complaint to omit the claim against Lloyd's. The court will grant that motion, deem the complaint to have been amended accordingly, and dismiss Lloyd's from the case. Lloyd's motion to dismiss, Dkt. 26, is denied as moot.

That leaves the manufacturer's motion to dismiss. Defendant Advanced Containment Systems, Inc., moves to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Dkt. 22. In the alternative, it seeks dismissal under Rule 12(b)(6) for failure to state a claim, contending that the terms of the shipping contract shield it from liability.

The court will grant the motion under Rule 12(b)(2). IKON hasn't made a prima facie showing that Advanced Containment has contacts with Wisconsin that satisfy Wisconsin's long-arm statute. IKON has asked for leave to file a sur-reply in support of its opposition to Advanced Containment's motion in which it seeks to supplement its constitutional analysis of the personal-jurisdiction issue. Dkt. 39. The court has considered the sur-reply, and Advanced Containment's response to it, Dkt. 40. The court will dismiss Advanced Containment as a defendant, and the case will proceed against the trucking company defendant only.

BACKGROUND

The court draws the following facts from the allegations in IKON's amended complaint, Dkt. 15, and the parties' evidentiary submissions, Dkt. 23 and Dkt. 33, which the court may consider in deciding a motion to dismiss on jurisdictional grounds. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The material facts are not disputed.

Plaintiff IKON Transportation Services, Inc. is a Wisconsin corporation with its principal place of business in Janesville, Wisconsin. It coordinates the shipment of goods for its customers.

Defendant Advanced Containment Systems, Inc. is a Texas corporation with its principal place of business in Houston, Texas. It manufactures "containment systems," two of which were damaged in the accident giving rise to this suit.

Defendant Texas Made Truckin, LLC, which does business under the name Freddy's Freight, is a limited liability company whose sole member is Alfredo Rodriguez, a citizen of Texas.

In 2018, the Department of Defense ordered two of Advanced Containment's containment systems through a non-defendant prime contractor based in Virginia, BOH Environmental, Inc. BOH Environmental hired IKON to coordinate shipment of the containment systems from Advanced Containment's facilities in Houston to Lexington, Kentucky. IKON in turn hired a trucking company, Freddy's Freight, to transport the containment systems.

On March 13, 2018, Rodriguez pulled up to Advanced Containment's loading dock with a flatbed trailer. Employees of Advanced Containment loaded the containment systems onto the trailer. Rodriguez then signed the bill of lading on behalf of Freddy's Freight. (A bill of lading serves as a contract between a carrier and a shipper for the transportation of goods, and it functions as a receipt for cargo accepted for transportation by the carrier.) After Rodriguez signed the bill of lading, but before he had secured the cargo to the flatbed trailer, someone from Advanced Containment instructed him to move the truck to another location

3

on the premises. At that second location, the two unsecured containers slipped off the trailer, damaging them.

Advanced Containment filed a claim with the Department of Defense and was able to recover the value of the cargo from the government. The government, in turn, issued a claim against IKON for $91,615.00. IKON paid that sum and then attempted to recover it from Freddy's Freight and Advanced Containment. When those attempts failed, IKON filed this lawsuit in the Circuit Court of Rock County, Wisconsin, as required under the forum-selection clause in IKON's broker-carrier agreement with Freddy's Freight. *See* Dkt. 15, ¶ 18. IKON asserts claims against Freddy's Freight, or, in the alternative, claims against Advanced Containment. Advanced Containment removed the case to this court. This court has subject matter jurisdiction under 28 U.S.C. § 1332 because IKON is a citizen of Wisconsin, Advanced Containment and Freddy's are citizens of Texas, and the amount in controversy exceeds $75,000.

ANALYSIS

Advanced Containment raises two grounds for dismissal in its motion, but the court need only reach the issue of personal jurisdiction. In deciding a motion to dismiss, the court accepts IKON's well-pleaded factual allegations as true and considers the supporting evidence adduced by the parties, resolving any factual disputes in IKON's favor. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). IKON bears the burden of making a prima facie showing of personal jurisdiction. *Id.* To do so, it must demonstrate that Advanced Containment falls within Wisconsin's long-arm statute, Wis. Stat. § 801.05. *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). If IKON makes that showing, the burden

shifts to Advanced Containment to show that exercising jurisdiction over it would offend due process. *Id.* Here, Advanced Containment contends that neither the Wisconsin long-arm statute nor due process permit it to be sued in Wisconsin.

**A. Wisconsin long-arm statute**

Although Wis. Stat. § 801.05 is liberally construed in favor of jurisdiction, *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 10, 245 Wis. 2d 396, 410, 629 N.W.2d 662, 668, IKON still bears the burden of establishing a prima facie case for personal jurisdiction under the statute. It fails to do so here.

IKON contends that this court may exercise personal jurisdiction over Advanced Containment under Wisconsin Statute § 801.05(5)(b), which confers jurisdiction in actions that "[a]rise[] out of services actually performed . . . for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant." IKON says that § 801.05(5)(b) applies because IKON provided services to Advanced Containment by arranging for the transportation of the shipment, which it did from its headquarters in Wisconsin, and that by loading the cargo onto Freddy's Freight's trailer in accordance with the bill of lading, Advanced Containment "ratified the fact that IKON's services were provided in Wisconsin." Dkt. 32, at 10. IKON concedes that Advanced Containment did itself not negotiate or execute the bill of lading. Dkt. 32, at 8.

This argument fails because IKON has not made a prima facie showing that (1) it actually performed services in Wisconsin for Advanced Containment, or that (2) Advanced Containment authorized or ratified any performance of services by IKON.

5

### 1. Services actually performed for the defendant

First, IKON has failed to make a prima facie showing that it performed services *for* Advanced Containment within the meaning of § 801.05(5)(b). The two companies did not contract, communicate, or otherwise directly engage with one another at any point before the accident. Instead, the companies worked with BOH Environmental. Advanced Containment contracted to sell its containment systems through BOH Environmental—a transaction to which IKON wasn't a party. BOH Environmental contracted with IKON to transport the containment systems—a transaction to which Advanced Containment wasn't a party. Because BOH Environmental was the intermediary, IKON and Advanced Containment had no direct relationship with one another. Indeed, according to Phil Dunne, Advanced Containment's president and CEO, no one at Advanced Containment was even aware that IKON existed until, at the earliest, just before the delivery when it received the bill of lading listing IKON as the carrier. Dkt. 23, ¶ 12.

IKON contends that a direct relationship between the parties isn't necessary under § 801.05(5)(b) so long as Advanced Containment "clearly benefited" from IKON's services by having its containment systems delivered to the Department of Defense. Dkt. 32, at 9. But as Advanced Containment points out, its receipt of compensation for the containment systems wasn't contingent on IKON's provision of shipping services; BOH Environmental would have paid Advanced Containment regardless whether IKON managed to send a delivery driver that day. Had IKON failed to do its job, it would have fallen to BOH Environmental to seek recourse, not to Advanced Containment. At most, Advanced Containment incidentally benefitted from IKON's transportation services because it was IKON rather than some other company that facilitated the movement of its products. But IKON cites no authority suggesting

6

that Wisconsin Statute § 801.05(5)(b) confers jurisdiction over defendants who merely enjoy the incidental benefits of a plaintiff's Wisconsin-based services. And the court's own review found case law that undermines IKON's broad interpretation of § 801.05(5)(b). *See, e.g., Edgenet, Inc. v. GS1 U.S., Inc.*, No. 09-cv-65, 2011 WL 2551702, at *9–10 (E.D. Wis. June 27, 2011) (defendant's indirect benefit from a service provided by plaintiff was not sufficient for jurisdiction under § 801.05(5)(b) when companies had no bargaining arrangement); *see also Flambeau Plastics, Corp. v. King Bee Mfg. Co.*, 24 Wis. 2d 459, 465, 129 N.W.2d 237, 240 (1964) (jurisdiction under § 801.05(5)(b) requires "a claim arising out of a bargaining arrangement made with the defendant by or on behalf of the plaintiff"), *overruled in part on other grounds by Pavalon v. Thomas Holmes Corp.*, 25 Wis. 2d 540, 131 N.W.2d 331 (1964). The court concludes that providing some incidental benefit to an out-of-state defendant isn't sufficient to show that a plaintiff performed services for that defendant under § 801.05(5)(b).

2. **Authorized or ratified by the defendant**

IKON also fails to show that Advanced Containment authorized or ratified IKON's services. The parties agree that Advanced Containment did not "authorize" IKON's services by approving of them ahead of time. But IKON contends that Advanced Containment "ratified" the services IKON provided in Wisconsin after the fact "[b]y loading the Subject Shipment onto Freddy's trailer." Dkt. 32, at 9. Ratification is an "affirmance by a person of a prior act which did not bind him, but which was done or professedly done on his account whereby the act . . . is given effect as if originally authorized by him." *Estate of Bydalek v. Metro. Life Ins. Co.*, 220 Wis. 2d 739, 746, 584 N.W.2d 164, 167 (Ct. App. 1998) (quoting Black's Law Dictionary 1261 (6th ed. 1990)). To prove ratification, a party must at minimum show: (1) "a definitive manifestation of intent to become a party to the transaction done or purported

7

to be on his account," *Matter of Alexander's Estate*, 75 Wis. 2d 168, 181, 248 N.W.2d 475, 482 (1977) (citing the Restatement (Second) of Agency § 93 (1957)); and (2) the ratifying party's "actual knowledge" of the "material facts" of the transaction at issue. *Straits Fin. LLC v. Ten Sleep Cattle Co.*, 900 F.3d 359, 372 (7th Cir. 2018) (citing Restatement (Third) of Agency § 4.06 (2006)). IKON makes neither showing.

IKON adduces no evidence that Advanced Containment provided any "definitive manifestation of intent" to ratify the performance of services by IKON. Advanced Containment did not execute the bill of lading, indicate that it agreed to its terms, or otherwise signal that it knew about and accepted IKON's services in Wisconsin. It simply loaded its products onto the Freddy's Freight truck—something it would have done regardless whether the shipment was coordinated by IKON or some other company. IKON says that the definitive-manifestation requirement doesn't apply in cases interpreting § 801.05(5)(b). *See* Dkt. 32, at 9 n.1. But "the doctrine of ratification has long been recognized in Wisconsin law" and has been applied in numerous settings. *Estate of Bydalek*, 220 Wis. 2d at 746. IKON cites no authority suggesting that the term "ratified" as it is used in § 801.05(5)(b) has a meaning distinct from the generally accepted legal usage, and the court can find none.

IKON also adduces no evidence that Advanced Containment had actual knowledge of the material facts of IKON's Wisconsin-based services. Advanced Containment says that it was unaware of the terms of the bill of lading, and that it could not have ratified any communications, contracts, or agreements between the Department of Defense, IKON, and Freddy's Freight. IKON contends that Advanced Containment had information sufficient to inform itself about the services IKON was providing and where it was providing those services from. IKON points specifically to (1) prior bills of lading Advanced Containment received for

shipments being coordinated by IKON, which included a reference to IKON along with a four-letter identification code that Advanced Containment could have looked up to discover that IKON was headquartered in Janesville, Wisconsin, *see* Dkt. 33-2; and (2) email communications between IKON and BOH Environmental, which included phone numbers listing IKON's Wisconsin area code in the signature block.[1]

Even assuming that Advanced Containment could have learned the material facts of IKON's Wisconsin-based services from these documents, the relevant question for purposes of ratification is not whether Advanced Containment could have learned the material facts had it tried harder; the question is whether Advanced Containment actually knew the facts and accepted an agreement to have IKON perform services for Advanced Containment. IKON provides no explanation why anyone from Advanced Containment would have bothered looking up the four-letter identification code on bills of lading and learned about IKON and the services it was providing from Wisconsin. Advanced Containment treated bills of lading like packing lists; the identity of the carrier listed on those bills wasn't relevant for its purposes. The same goes for the emails between IKON and BOH Environmental that included IKON's Wisconsin area code in the signature block. Even assuming knowledge of IKON's area code could be imputed to Advanced Containment, IKON provides no reason why an email recipient

---

[1] IKON acknowledges that Advanced Containment employees were not included on these emails, but it says that knowledge of IKON's area code (and thus its Wisconsin-based location) should be imputed to Advanced Containment because "BOH clearly had a close working relationship" with Advanced Containment, and "it appears that BOH acted as [Advanced Containment's] agent" for purposes of the transaction at issue." Dkt. 32, at 10, 11. It cites no evidence to support its supposition that BOH Environmental was Advanced Containment's agent.

9

would have or should have looked up an area code from a signature block to learn more about IKON.

IKON has pointed to no evidence that Advanced Containment manifested an intent to accept the benefit of or even had knowledge of the material facts of IKON's Wisconsin-based services, so it hasn't shown that Advanced Containment "ratified" those services as required under § 801.05(5)(b).

## B. Due process

Even if the court were to conclude that Wisconsin's long-arm statute conferred jurisdiction over Advanced Containment, IKON would not be able to establish that jurisdiction comports with constitutional due process requirements. For the court to exercise personal jurisdiction over an out-of-state defendant, that defendant must have "sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (citation and quotation marks omitted). At a minimum, this requires establishing that the defendant "purposefully availed himself of the privilege of conduct business in the forum state or purposefully directed his activities at the state." *Id.* "[I]t must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Purdue Research Found.*, 338 F.3d at 780.

Here, the question is not a close one. Advanced Containment neither conducted business in nor directed its activities at Wisconsin. It had no direct relationship with IKON and no reason to know about IKON's Wisconsin-based activities. IKON's unilateral activity in coordinating the transport of the containment systems from Wisconsin is not sufficient to confer personal jurisdiction over Advanced Containment in Wisconsin. The court concludes

that it lacks personal jurisdiction over Advanced Containment, so it must dismiss it from the case.

**C. Jurisdictional discovery**

IKON asks for an opportunity to conduct limited jurisdictional discovery so that it can learn about the nature of the relationship between Advanced Containment and BOH Environmental, and about what information Advanced Containment was provided in advance of the March 13, 2018 shipment. Dkt. 32, at 16. But a party isn't entitled to jurisdictional discovery unless it can make a prima facie case for jurisdiction. *See GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1026 (7th Cir. 2009). Here, IKON hasn't provided any evidence that IKON was providing services for Advanced Containment or that Advanced Containment definitively manifested its intent to accept those services. Even assuming that Advanced Containment somehow knew or had reason to know material facts about what IKON was, where it was based, or what it did, IKON still wouldn't be able to make a prima facie case that Advanced Containment ratified its services. The court will deny IKON's request and grant Advanced Containment's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

ORDER

IT IS ORDERED that:

1. The parties' stipulation of dismissal, Dkt. 44, is construed as a motion to amend the complaint to omit claims against defendant Those Certain Underwriters at Lloyd's London Subscribing to Policy No. B113610080C16-0417. That motion is GRANTED.

2. Those Certain Underwriters at Lloyd's London Subscribing to Policy No. B113610080C16-0417 is DISMISSED from the case.

3. Those Certain Underwriters at Lloyd's London Subscribing to Policy No. B113610080C16-0417's motion to dismiss, Dkt. 26, is DENIED as moot.

4. Defendant Advanced Containment System, Inc.'s motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, Dkt. 22, is GRANTED.

5. Defendants Advanced Containment is DISMISSED from the case.

6. Plaintiff IKON Transportation Services, Inc.'s motion for leave to file a sur-reply, Dkt. 39, is GRANTED.

Entered January 27, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge