IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IKON TRANSPORTATION SERVICES, INC.,

                    Plaintiff,

          v.                                            OPINION and ORDER

TEXAS MADE TRUCKIN, LLC a/k/a ALFREDO                   19-cv-296-jdp
RODRIGUEZ d/b/a FREDDY'S FREIGHT,

                    Defendant.

---

This case concerns a shipment of goods that was damaged when it fell off a flatbed truck while it was still on the property of the manufacturer and shipper, Advanced Containment Systems, Inc. Plaintiff IKON Transportation Services, Inc. is the transportation broker that arranged the shipment. IKON sued Advanced Containment Systems and Freddy's Freight, the trucking company responsible for the flatbed truck. Advanced Containment Systems has been dismissed from the case for lack of personal jurisdiction. So the issue now is whether Freddy's Freight must reimburse IKON the $91,615.00 it paid for the damaged cargo.

IKON has moved for summary judgment, asserting that it is entitled to judgment under both federal statutory law and its broker-carrier agreement with Freddy's Freight. Dkt. 47. The summary judgment briefing left some legal issues unaddressed, so the court held a hearing on the motion on June 22, 2020. Now with the benefit of the parties' supplemental arguments, the court will deny IKON's motion. IKON forfeited the federal claim by failing to plead it or otherwise put Freddy's Freight on notice of it before summary judgment. And IKON's breach-of-contract claim hinges on disputed issues of fact, which can't be resolved at summary judgment. So the case will proceed to trial on IKON's breach-of-contract claim.

UNDISPUTED FACTS

The following facts are undisputed.

Plaintiff IKON Transportation Services, Inc. is a Wisconsin corporation with its principal place of business in Janesville, Wisconsin. It provides transportation brokerage services, which means that it arranges for transportation of goods for its customers. Defendant Texas Made Truckin, LLC, which does business under the name Freddy's Freight, is a limited liability company whose sole member is Alfredo Rodriguez, a citizen of Texas. Freddy's Freight is a trucking company and licensed carrier of products for interstate shipment.

In 2017, IKON retained Freddy's Freight to transport freight for IKON's customers. Under their broker-carrier agreement, Freddy's Freight generally agreed to assume liability for loss or damage of freight while it was in Freddy's Freight's custody and control. Dkt. 50-2, ¶ 12. But there were exceptions to the general rule, mainly when freight was held up for reasons beyond Freddy Freight's control, when Freddy's Freight would liable only if it were negligent. *Id.* ¶ 11.

IKON enlisted Freddy's Freight to transport two "containment systems," which resemble large, reinforced dumpsters. Dkt. 50-3, at 14–16. The shipment was to be picked up at Advanced Containment Systems's facility and delivered to a site in Kentucky for the United States Department of Defense. On March 13, 2018, Rodriguez, on behalf of Freddy's Freight, arrived at Advanced Containment Systems's loading dock in Houston, Texas with a semi-tractor and flatbed trailer. Employees of Advanced Containment Systems placed the containment systems onto the trailer. Rodriguez signed the bill of lading on behalf of Freddy's Freight. *See* Dkt. 50-1. After Rodriguez signed the bill of lading, he began the process of securing the containment systems to the trailer. But before he could finish securing the load,

someone from Advanced Containment Systems directed him to move the truck to another location on the premises. Rodriguez protested, asserting that he needed to secure the shipment before moving the truck, but Advanced Containment Systems insisted. At that second location, the two unsecured containers slipped off the trailer, damaging them.

Advanced Containment Systems filed a claim with the Department of Defense and recovered the value of the cargo from the government. The government, in turn, issued a claim against IKON for $91,615.00. IKON paid that sum and then attempted to recover it from Freddy's Freight and Advanced Containment Systems. When those attempts failed, IKON filed suit against them in state court in Rock County, Wisconsin. Advanced Containment Systems removed the case to this court and moved to dismiss the claims against it for lack of personal jurisdiction. The court granted the motion, Dkt. 46, leaving Freddy's Freight as the sole defendant.

This court has subject matter jurisdiction under 28 U.S.C. § 1332 because IKON is a citizen of Wisconsin, Freddy's Freight is a citizen of Texas, and the amount in controversy exceeds $75,000.

ANALYSIS

IKON contends that it is entitled to summary judgment on two grounds. First, it says that Freddy's Freight is liable under the Carmack Amendment to the Interstate Commerce Act, which allows shippers to sue carriers for "the actual loss or injury to the property caused by" the carrier. 49 U.S.C. § 14706(a)(1). Second, IKON says that Freddy's Freight is liable for the damage to the shipment under the parties' broker-carrier agreement.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing IKON's motion for summary judgment, the court construes all facts and draws all reasonable inferences in favor of Freddy's Freight. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If no reasonable juror could find for Freddy's Freight based on the evidence in the record, then summary judgment is appropriate. *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996 (7th Cir. 2018) (citations omitted).

## A. Carmack Amendment claim

The Carmack Amendment, 49 U.S.C. § 14706, provides a nationally uniform scheme of carrier liability for goods lost or damaged in interstate transit. It was enacted in 1906 to supersede "the disparate schemes of carrier liability that existed among the states, some of which allowed carriers to limit or disclaim liability, others that permitted full recovery." *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008) (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913)). The Carmack Amendment establishes a default rule making carriers of an interstate shipment "liable to the person entitled to recover under the receipt or bill of lading," who may bring suit in state or federal court against the carrier for the "actual loss or injury to the property" sustained in the course of the interstate shipment. 49 U.S.C. § 14706 (a)(1), (d)(3). Under this regime, a shipper can be "confident that the carrier will be liable for any damage that occurs to its shipment," and "a carrier can accurately gauge, and thus insure against, any liability it may face when it agrees to carry something." *REI Transp.*, 519 F.3d at 697.

Freddy's Freight says that IKON forfeited the Carmack Amendment claim by failing to plead it or otherwise provide notice that it intended to seek relief under the Carmack

Amendment. Although IKON cited 49 U.S.C. § 1404(b) in the "Facts Related to Jurisdiction" section of its amended complaint, Dkt. 15, ¶ 11, IKON did not mention or allude to any federal statutory claim in enumerating the five counts it purported to assert against the various defendants then in the case, all of which were state-law causes of action. *See id.* ¶¶ 35–55 (pleading indemnification, negligent misrepresentation, unjust enrichment, and two counts of negligent breach of contract). IKON asserted a single cause of action against Freddy's Freight, which it styled as "negligent breach of contract," and the paragraphs discussing it made clear that the crux of the claim was Freddy's Freight's alleged breach of the broker-carrier agreement. *See id.* ¶¶ 35–38. IKON didn't raise the Carmack Amendment claim until its summary judgment brief.

Although a complaint need not identify specific legal theories, "pleading is still vitally important to inform the opposing party of the grounds upon which a claim rests; a complaint is adequate only if it fairly notifies a defendant of matters sought to be litigated." *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 679 (7th Cir. 2005). IKON says that Freddy's Freight had adequate notice of the Carmack Amendment claim because the broker-carrier agreement was "entirely consistent" with the Carmack Amendment and contained no express waiver of the rights or remedies it provided. Dkt. 55, at 3. But that's not sufficient. As IKON acknowledged at the motion hearing, the Carmack Amendment "generally preempts separate state-law causes of action that a shipper might pursue against a carrier for lost or damaged goods." *REI Transp.*, 519 F.3d at 697. So when IKON pleaded a breach-of-contract claim, Freddy's Freight would have had no reason to know that IKON was also contemplating a claim under the Carmack Amendment. What's more, in response to a show-cause order from this court regarding diversity of citizenship, Dkt. 41, IKON voluntarily dismissed the defendant (an insurer) whose

presence raised jurisdictional concerns. Dkt. 44. This suggested that, like defendants and the court, IKON was proceeding on the assumption that this court's jurisdiction was based solely on diversity rather than any federal cause of action. IKON did not provide Freddy's Freight with fair notice of the Carmack Amendment claim, so that claim is not properly in the case.

In a footnote to its reply brief, IKON asks for permission to amend its complaint to add the claim should the court conclude that IKON failed to adequately plead it. Dkt. 55, at 3 n.1. It says that Freddy's Freight hasn't been prejudiced by the tardy assertion of a Carmack Amendment claim because it was able to address the claim in its opposition to summary judgment. But the test for liability under the Carmack Amendment differs from the test for liability under the parties' broker-carrier agreement. *See REI Transp.*, 519 F.3d at 699 (discussing the elements of a Carmack Amendment claim). Freddy's Freight lacked notice that IKON was going to subject it to that test until summary judgment, giving it no prior opportunity to prepare a defense and, perhaps, challenge the Carmack Amendment claim with its own motion for summary judgment. The court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), but IKON's request comes far too late. IKON has forfeited any claim to relief under the Carmack Amendment by failing to provide notice of it until summary judgment.[1] *See Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*,

---

[1] Even if the claim weren't forfeited, the court would still deny summary judgment on it. A carrier can rebut the presumption of liability under the Carmack Amendment by showing that it was free from negligence and that the damage to the cargo was due to an act of the shipper. *Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.*, 211 F.3d 367, 369 n.2 (7th Cir. 2000). As explained below, these matters are disputed. A reasonable jury could conclude that the damage was due to a negligent act of the shipper: no one disputes that but for Advanced Containment Systems's order, Freddy's Freight would not have moved the truck with the cargo unsecured. Dkt. 57, ¶ 10.

559 F.3d 595, 606 (7th Cir. 2009) (district court did not abuse its discretion in declining to reach claim raised for the first time at summary judgment); *Conner*, 413 F.3d at 679 (same).

## B. Breach-of-contract claim

That leaves IKON's claim for breach of contract. Parts of the parties' broker-carrier agreement puts Freddy's Freight in the position of insurer, assigning it liability for any loss or damage to cargo occurring while that cargo is in Freddy's Freight's custody or control. *See* Dkt. 50-2, ¶ 12 ("Carrier hereby assumes all liability for loss and damage while such commodities are in Carrier's custody or control."); ¶ 11 ("Carrier shall be liable to consignor/shippers, consignee/receivers, and/or owners of Freight for loss or damage to any property transported from the time the Freight is loaded upon Carrier's equipment until said Freight is delivered to the designated consignee/receiver."). But there are important exceptions to the general rule. As relevant here, the agreement provides that Freddy's Freight is liable only for its own negligence "for loss, damage, or delay occurring while the property is stopped and held in transit upon the request of consignor/shipper, owner, or party entitled to make such a request." *Id.*

The parties' summary judgment arguments focus exclusively on whether Freddy's Freight was negligent in driving across Advanced Containment Systems's freight yard with unsecured cargo. But under Wisconsin law, "[q]uestions of negligence are rarely susceptible to resolution on motions for summary judgment." *Madison Newspapers, Inc. v. Pinkerton's Inc.*, 200 Wis. 2d 468, 478, 545 N.W.2d 843, 848 (Ct. App. 1996).[2]

---

[2] The broker-carrier agreement provides that it "shall be construed and enforced in accordance with the laws of the State of Wisconsin," Dkt. 50-2, ¶ 19, so the court applies Wisconsin law.

The facts submitted by the parties are largely undisputed. But those facts don't establish that this is one of those rare cases in which the court can decide negligence as a matter of law. The circumstances of Advanced Containment Systems's order that Rodriguez move the truck prior to securing the load aren't clear: What was the nature of the order? Who communicated it and how? Could Rodriguez realistically have refused to comply? Nor is there evidence sufficient to establish why exactly the containment systems fell off the truck. It appears from photos of the accident's aftermath that the containment systems were heavy with stable, rectangular bases. *See* Dkt. 50-3, at 14–16, 18–22. It isn't self-evident that driving a short distance across a well-maintained freight yard would pose an unreasonable risk of such cargo falling off a flatbed, even if unsecured. An incident report in the record says that the cargo "fell off the truck after taking a turn," which could support an inference that Rodriguez was negligent in the way he operated the truck. *Id.* at 12. But the photos show the truck in a narrow corridor on the edge of the freight yard, not on a curve. *Id.* at 19. From the photos, it appears that the cargo may have tipped off the truck due to uneven terrain, *see, e.g.*, *id.* at 20, which suggests negligent maintenance by Advanced Containment Systems. The court cannot conclude, with these many unknown facts, that Freddy's Freight was negligent as a matter of law.

So IKON isn't entitled to summary judgment on a negligence-based theory. But what about the provisions of the contract that impose essentially strict liability on Freddy's Freight for loss or damage occurring while the cargo is under its custody or control? Although IKON listed these provisions in passing in its summary judgment brief, *see* Dkt. 48, at 6, neither party developed an argument about how the provisions apply in this case. The court asked the parties to address their application at the motion hearing.

8

At the hearing, Freddy's Freight asserted that the strict liability provisions in the contract don't apply because the cargo was not yet in its "custody or control" at the time of the accident. Rather, Advanced Containment Systems still had control of the containment systems, as demonstrated by the fact that it assumed authority to order Freddy's Freight what to do and where to go with the load. Freddy's Freight also noted that the broker-carrier agreement provides that when "the property is stopped and held in transit upon the request of the consignor/shipper," Freddy's Freight is only liable for its own negligence. Dkt. 50-2, ¶ 11. When Advanced Containment Systems commanded Rodriguez to move the cargo to another location on its premises, a reasonable jury could find that the cargo was held at the direction of Advanced Containment Systems. If so, whether the broker-carrier agreement was breached turns again on the disputed matter of negligence.

IKON took the opposite position. It argued that Freddy's Freight took custody or control of the cargo when it signed the bill of lading, and that the exception in the broker-carrier agreement for damage occurring while the cargo is stopped and held in transit at the shipper's request has no application in this case. Rodriguez's signing the bill of lading indicates that Freddy's Freight received the containment systems in good condition at the time. *See* Dkt. 50-2, ¶ 7 ("The Bill of Lading shall be exclusive evidence of the receipt of such goods by Carrier in good order and condition and stated count/quantity unless otherwise specifically noted on the face thereof."). But reasonable jurors could disagree about whether Freddy's Freight actually had "control" over the cargo at the time of the accident. The parties agreed that Rodriguez would not have moved the truck but for the order from Advanced Containment Systems, *see* Dkt. 57, ¶ 10, which suggests that Advanced Containment Systems was still wielding control over the cargo when the accident occurred.

9

On this evidentiary record, it is not established beyond genuine dispute that Freddy's Freight was negligent, or that it would be subject to strict liability under the broker-carrier agreement. Because IKON hasn't demonstrated that it is entitled to judgment as a matter of law on its breach-of-contract claim, the matter will need to be decided at trial.

ORDER

IT IS ORDERED that plaintiff IKON Transportation Services, Inc.'s motion for summary judgment, Dkt. 47, is DENIED.

Entered June 26, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge